**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| MICHAEL R. ROBINSON,<br><br>Plaintiff,<br><br>vs.<br><br>PEARSON GOVERNMENT SERVICES et al.,<br><br>Defendants. | No. CV-08-1011-PHX-GMS<br><br>**ORDER** |

Pending before the Court are the Motion for Summary Judgment of Defendants Solution Staffing ("Solution") and Suzie Morales (Dkt. # 27) and the Motions to Strike of Plaintiff Michael Robinson (Dkt. ## 32, 34). For the reasons set forth below, the Court grants Defendants' Motion and denies Plaintiff's Motions.[1]

**BACKGROUND**

Plaintiff Michael R. Robinson, an African-American man, was hired by Solution, a temporary employment agency, on August 24, 2006. Robinson signed Solution's standard employment agreement on the same date. Among the terms to which Robinson agreed was a provision for accepting work from various customers, provided that the compensation was

---

[1] Both parties have requested oral argument. The request is denied because oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

1 "no less than 75% of the hourly wages of [the employee's] starting hourly pay." (Dkt. # 28 Ex. A.) According to the agreement, failure to accept further commensurate employment would result in "voluntary resignation" and removal from active job-seeking status with the agency. (*Id.*)

Robinson was assigned to work for Pearson Government Services ("Pearson") on August 28, 2006. His duties included working as a Customer Service Representative by answering questions from incoming callers to an "800-Medicare" telephone line. He was paid an hourly rate of $8.78 for his work. Pearson dismissed Robinson on November 21, 2006.

Solution asserts that Robinson appeared on November 22, 2006, "yelling and making threats against the employees in the [Solution] office" because he was unhappy with losing his position at Pearson. (Dkt. # 27 at 3.) Solution's notes indicate that during a call-in to check on available positions on January 10, 2007, Robinson "got rude because [there was] nothing clerical available." (Dkt. # 38 Ex. E.)

Thereafter, Solution attempted to place him with three different businesses. On January 11, 2007, at Robinson's request, Solution sent his resume to a client, Speedie and Associates, but that company declined the placement. Robinson refused to accept placements with clients A.E. Petsche Co., on January 10, 2007, and United Blood Services twice, once on January 12, 2007, and again on January 23, 2007. Robinson asserted that the hours and pay for the refused positions were not equal to seventy-five percent of his prior compensation as required by his employment agreement. (*Id.*) The hourly rates offered by United Blood Services and A.E. Petsche were $10.50 and $10.00 per hour, respectively. Robinson continued to call in to Solution and check on other potentially available positions. On January 23, 2007, Robinson looked at his file at the Solution office and notified a Solution employee that he had sent a letter to the Equal Employment Opportunity Commission. On January 30, 2007, he called in again looking for work, and was advised that Solution could "no longer use him" and that he would "have to go to another agency." (*Id.*)

Robinson filed his Complaint on May 30, 2008, alleging racial discrimination against Pearson, Martha Mendoza, Ralph Hatfield, Solution, and Suzie Morales. (Dkt. # 1.) The Complaint alleges that he was discriminated against in violation of Title VII when he did not receive any other acceptable assignment from Solution after being dismissed from Pearson and when he was removed from active placement status by Solution. (Dkt. # 1 at 2.) Defendants Pearson, Mendoza, and Hatfield were dismissed from the case by Court Order on November 30, 2008, for Plaintiff's failure to serve the summons and complaint. (Dkt. # 17.)

Defendants Solution and Morales filed the instant Motion for Summary Judgment on January 23, 2009, pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Dkt. # 27.) Plaintiff Robinson filed a Response to the Motion on February 23, 2009, as well as two separate Motions to Strike. (Dkt. ## 30, 32, 34.)

## DISCUSSION

### I. Legal Standard

On a Rule 56 motion, a party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). This burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Ninth Circuit has refused to find a "genuine issue" where the only evidence presented is "uncorroborated and self-serving" testimony. *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996).

**II. Analysis**

There are four elements to a prima facie case of racial discrimination. "[T]he plaintiff must show that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." *Chuang v. Univ. of California-Davis*, 225 F.3d 1115, 1123 (9th Cir. 2000) (applying *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). In establishing a prima facie case of racial discrimination, "[t]he requisite degree of proof necessary . . . is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). If the plaintiff is able to establish a prima facie case, the "burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Chuang*, 225 F.3d at 1123-24. Once the defendant has put forward a legitimate nondiscriminatory explanation for the challenged action, the burden then shifts back to the plaintiff show that the explanation is only pretextual. *McDonnell Douglas*, 411 U.S. at 804.

Even when viewing the evidence in the light most favorable to Robinson, he has failed to offer any evidence demonstrating that similarly situated persons outside his suspect class were treated differently. Assuming that Robinson has established the other three elements successfully, a failure to establish the fourth element is fatal to his prima facie case. *See, e.g.*, *Gates v. Caterpillar, Inc.*, 513 F.3d 680 (7th Cir. 2008) (affirming summary judgment when plaintiff failed to show similarly situated employees were treated differently); *Hawn v. Executive Jet Mgmt., Inc.*, 546 F. Supp. 2d 703, 717 (D. Ariz. 2008) (granting summary judgment when plaintiffs failed to establish the similarly situated individuals element of a discrimination case); *Peterson v. Pac. Mar. Ass'n*, No. C07-783JLR, 2009 WL 666891, at *5 (W.D. Wa. 2009) (same). The fourth element of a prima facie case is vital in showing that discrimination occurred. "Under Title VII, an individual suffers disparate treatment "when he or she is 'singled out and treated less favorably than others similarly situated on account of race.'" *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1121 (9th Cir. 2004) (citation

- 4 -

omitted). Absent some showing that other individuals outside the suspect class were treated differently, Plaintiff has not established any disparity, or any nexus between the alleged racial discrimination and the adverse employment action. "Steps three and four are, in effect, an inquiry as to whether the employer's action[s] were based on discriminatory intent." *Barkhurst v. Johanns*, No. 07-CV-426-BR, 2008 WL 4826278, at *10 (D. Or. 2008) (citing *McGinest*, 360 F.3d at 1123). Since Robinson has failed to offer any evidence and there is nothing in the record that demonstrates this prong, the fourth element is not established and summary judgment is appropriate.

## CONCLUSION

Defendants' Motion for Summary Judgment is granted. Given the disposition of Defendants' Motion, Plaintiff's Motions to Strike are denied as moot.[2]

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Dkt. # 27) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motions to Strike (Dkt. ## 32, 34) are **DENIED**.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[2] Plaintiff's Motions to Strike are moot because the Court does not rely on the contents of the challenged documents in the disposition of the case. The Court also notes that they are not properly before the Court because they were filed incorrectly. Rather than being filed as separate motions, Rule 7.2(m)(2) of the Local Rules requires that such motions be included in Plaintiff's Response to Defendants' Motion for Summary Judgment Separate Statement of Facts.

1  **IT IS FURTHER ORDERED** directing the Clerk of the Court to **TERMINATE** this
2  matter.
3  **DATED this 22nd day of April, 2009.**

G. Murray Snow
United States District Judge

- 6 -